FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 27, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRITTNEYJO W.,[1] | No. 4:18-cv-05076- MKD |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | ECF Nos. 12, 13 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 12, 13. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

18.  The Court, having reviewed the administrative record and the parties' briefing,

is fully informed.  For the reasons discussed below, the Court grants Plaintiff's

Motion, ECF No. 12, and denies Defendant's Motion, ECF No. 13.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

ORDER - 2

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

ORDER - 4

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On November 28, 2011, Plaintiff filed an application for Title II disability insurance benefits alleging an onset date of August 1, 2007. Tr. 157-58. The application was denied initially, Tr. 100-02, and on reconsideration, Tr. 104-05. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on September 10, 2014. Tr. 43-67. The ALJ first denied Plaintiff's claim on October 7, 2014. Tr. 15-36. The Appeals Council denied Plaintiff's request for review. Tr. 8-13. On appeal, the Court remanded the case for further proceedings because the ALJ erred in evaluating Plaintiff's subjective symptom claims and in determining fibromyalgia was a non-severe impairment at step two. Tr. 716-29; *Womack-*

*Wright v. Colvin*, No. 4:16-cv-05005-JTR (E.D. Wash. Feb. 28, 2017) (Remand Order, ECF No. 22).

Plaintiff appeared for but did not testify at a second hearing on December 5, 2017. Tr. 661-78. On February 27, 2018, the ALJ issued a second decision denying Plaintiff's claim. Tr. 632-60. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of August 1, 2007 through her date last insured of December 31, 2013. Tr. 638. At step two, the ALJ found Plaintiff had the following severe impairments: migraine headaches; back disorder; cholecystitis with abdominal pain; obesity; asthma; depressive disorder; anxiety disorder; marijuana abuse, continuous; and fibromyalgia.[3] Tr. 638. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 639. The ALJ then concluded that Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] can stand and or walk for four hours per day, and requires the ability to alternate between sitting and standing approximately every sixty minutes; she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but can never climb ladders, ropes, or scaffolds; [Plaintiff] must avoid concentrated exposure to extreme temperatures, noise, respiratory irritants and hazards; she can understand, remember, and carry out simple, routine, repetitive tasks and instructions, and can maintain attention and concentration on simple routine tasks for two hour intervals

---

[3] These were the same impairments found in the first decision, plus fibromyalgia.

between regularly scheduled breaks; [Plaintiff] can tolerate no more than occasional changes in work schedules or work routines; when there are changes in work routines, [Plaintiff] must require additional time to adapt to those changes, approximately ten percent more time than an average individual would need to adapt to these changes; [Plaintiff] cannot work at fast paced, production rates; she can have no interaction with the public, and at most occasional, superficial interaction with coworkers, that is, non-collaborative interactions with coworkers, and no teamwork-type duties; [Plaintiff] can interact with coworkers in no more than small groups, and never with crowds of coworkers.

Tr. 641-42.[4]

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 652. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as office helper, mail clerk, or collator operator. Tr. 652-53. The ALJ concluded Plaintiff was not under a disability, as defined in the

_____

[4] The ALJ found that the addition of fibromyalgia as a severe impairment warranted amending the previously determined RFC to change the time Plaintiff would need to alternate between sitting and standing to every 60 minutes, instead of every 60-90 minutes, and limit Plaintiff to occasional rather than frequent postural activities. Tr. 645.

ORDER - 8

Social Security Act, from August 1, 2007, through December 31, 2013, the date last insured. Tr. 653.

The Appeals Council did not assume jurisdiction of the case, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. § 404.984(a).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's 2018 final decision denying her disability income benefits under Title II of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed Plaintiff's symptom claims; and

2. Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 12 at 1.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for violating the law of the case doctrine and failing to rely on clear and convincing reasons in discrediting her subjective symptom claims. ECF No. 12 at 9-15. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. Social Security Ruling (SSR) 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c)(1)-(3). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 643.

### 1. Record on Remand

The ALJ considered Plaintiff's symptom claims set forth in her adult function report, Tr. 219-26, and her testimony at the first hearing, Tr. 57-62. Tr. 642-43. Plaintiff asserted disabling symptoms of pain and fatigue, among other symptoms. Tr. 642-43. At the first hearing, Plaintiff testified about her symptoms

of anxiety and depression; she was not questioned about symptoms of her other impairments.[5]  Tr. 56-58.  In its Remand Order, the District Court commented on the limited testimony: "the hearing testimony of Plaintiff merely consisted of a very brief description of two of Plaintiff's impairments, anxiety and depression," despite Plaintiff's claims of disabling PTSD, depression anxiety, migraine headaches, chronic pain, spasm, and temporomandibular joint (TMJ) syndrome. Tr. 721.  The Court expressed concern that the ALJ "did not ask Plaintiff about her impairments and resultant limitations," despite the ALJ's "affirmative duty to supplement and develop the record to assure that a claimant's interests are fully considered."  Tr. 721.

At the second administrative hearing on remand, the ALJ indicated that she was "kind of confounded with regards to what the District Court expected me to do with regards to a new hearing."  Tr. 663.  Despite the indications in the Remand Order, Plaintiff was not given the opportunity to testify at the second hearing. Instead, the ALJ informed Plaintiff's counsel "your client's not really going to

---

[5] Plaintiff testified she experienced anxiety a few times a week and it caused her to "want to go crawl in a hole" and "everything to hurt worse."  Tr. 58.  Plaintiff also testified that depression caused her fatigue and pain, sometimes to the point she could not get out of bed.  Tr. 58-59.

have any pertinent testimony to provide." Tr. 664. The ALJ stated that additional testimony from Plaintiff was unnecessary because her testimony at the last hearing "would encompass her condition through the date last insured so there would be no additional testimony with regards to any more recent medical conditions or treatment that would be pertinent or relevant to this case." Tr. 664.

The ALJ opened the record for submission of additional medical evidence, called another vocational expert to testify, and permitted argument by Plaintiff's counsel. Tr. 643, 661-78. The ALJ accepted 570 pages of additional medical evidence. Tr. 827-1396. However, the ALJ deemed 345 of these pages, as well as 49 pages of previously reviewed medical evidence, not relevant because it fell "outside the valid period under consideration." Tr. 643. The additional medical evidence added to the record on remand preceding the date last insured stemmed from hospital emergency room visits on just three dates: February 23, 2013 for congestion, body aches, headache, fatigue and difficulty thinking; October 27, 2013 (visits to two hospitals) for jaw pain; and May 12, 2013 for treatment and surgery for acute cholecystitis. Tr. 849-59, 950-57, 971-1175.

### 2. *Daily Activities*

Defendant contends the ALJ discredited Plaintiff because "Plaintiff maintained somewhat a significant level of daily activity throughout the relevant period." ECF No. 13 at 8.

ORDER - 13

The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted).

The ALJ's reference to daily activities is found in the concluding paragraph stating: "Consideration has been given to the claimant's daily activities . . .The record lacks corroborative clinical objective evidence consistent with the degree of limitations alleged by the claimant. I find that, while the claimant is certainly limited to functioning to some degree, it is not to the degree alleged." Tr. 651. Elsewhere in the decision, the ALJ summarized Plaintiff's description of limitations in daily activities, Tr. 643, and Plaintiff's mother's description noting that Plaintiff is "independent in self-care, that she is able to care for her three children, she is able to drive a car, she is able to go shopping, she is able to prepare

meals, and she is able to pay her own bills and handle a savings account." Tr. 651 (citing Tr. 181-83). However, without any explanation of how Plaintiff's described daily activities were inconsistent with her allegations of disabling symptoms and limitations, it does not provide a clear and convincing reason to discredit Plaintiff's symptom claims. Indeed, the Court's Remand Order specifically held that the same daily activities, which were also identified in the 2014 decision, were "not necessarily inconsistent with Plaintiff's description of limitations, and there is no evidence of record which shows that Plaintiff is able to spend a substantial part of her day engaged in the performance of work[sic]related functions." Tr. 725.

This was not a clear and convincing reason to discredit Plaintiff's symptom claims.

### 3. Inconsistent with Objective Medical Evidence

The ALJ found the severity of Plaintiff's physical and mental health symptoms were not supported by the objective medical evidence. Tr. 643-47. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.

*Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).  Minimal objective evidence

is a factor which may be relied upon to discount a claimant's testimony, although it

may not be the only factor.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

a.      Physical Symptoms

The ALJ found that Plaintiff is not as limited by her physical symptoms as

alleged.  Tr. 643.  First, the ALJ explained her disagreement with the Court's

Remand Order stating that the Order had "dwelled on" a number of other aspects

of the objective medical evidence from examinations which the ALJ believed

"actually support[ed]" the RFC.  Tr. 644.  For example, the ALJ noted that the

May 2010 examination showed Plaintiff had crepitus, tenderness, and effusion in

her right periscapular area, but "no other abnormalities" and the Plaintiff was

described as "seems hypersensitive."  Tr. 644 (citing Tr. 313-14).  Second, the ALJ

found that the additional medical evidence added to the record after remand did

"not disturb the essential findings of the prior decision."  Tr. 645.  The ALJ then

repeated the same reasons for her adverse finding in 2014: (1) the objective

imaging of Plaintiff's lower back showed only mild degenerative changes at the

L4-L5 and L5-S1 levels, Tr. 645 (citing Tr. 395); (2) Plaintiff demonstrated

"normal strength" through the period under consideration, Tr. 645 (citing Tr. 299,

537); (3) Plaintiff "consistently exhibited no motor or sensory deficits, inconsistent

with her allegations of strength and sensation loss," Tr. 646 (citing Tr. 351, 369,

385, 391, 537, 573, 577, 852); and (4) Plaintiff's treatment for migraines and asthma was "minimal" during the period, Tr. 646 (citing Tr. 270, 401-03). The ALJ acknowledged that Plaintiff at times exhibited reduced range of motion in her lumbar spine, but noted that at other times she exhibited a functional, active range of motion, Tr. 646 (comparing Tr. 326, 536 with Tr. 301). The ALJ concluded that the objective medical evidence supports the RFC and indicates Plaintiff "is not as limited as alleged." Tr. 646.

Plaintiff asserts several errors in the ALJ's finding with regard to Plaintiff's physical symptoms, including 1) that the ALJ violated the law of the case doctrine by reconsidering the issue of consistency of Plaintiff's physical symptom testimony with the objective evidence, 2) the evidence cited by the ALJ supports Plaintiff's claimed disability; and 3) lack of medical evidence was not a valid reason to solely discount Plaintiff's symptom claims. ECF No. 12 at 9-13. As discussed below, the Court agrees that the ALJ violated the law of the case doctrine. However, even if there was no violation of the law of the case, the ALJ's adverse finding as to Plaintiff's physical symptom claims is inadequate because the lack of objective evidence cannot be the sole basis for discounting Plaintiff's claims.

"The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same

case." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) (citing *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)). "The doctrine of law of the case comes into play only with respect to issues previously determined." *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979). In other words, "the issue in question must have been decided explicitly or by necessary implication in the previous disposition." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000). "Application of the doctrine is discretionary." *Id*. Thus, even if the doctrine applies, a court may exercise its discretion to depart from it because of exceptions that arise "when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Stacy*, 825 F.3d at 567 (citing *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991) ).

Following the first administrative hearing, the District Court held that the ALJ erred in the evaluation of Plaintiff's physical symptom complaints because "[c]ontrary to the ALJ's determination, and with specific regard to the ALJ's credibility determination, the Court finds Plaintiff's reported physical complaints are substantiated by objective record evidence." Tr. 724; *see* Tr. 723-24 (explaining finding). The ALJ was directed to "reexamine Plaintiff's statements and testimony" and "discuss the limitations stemming from Plaintiff's severe fibromyalgia." Tr. 728. The ALJ's finding with regard to Plaintiff's physical

symptoms is a repetition of the 2014 findings, with the additions that the ALJ disagreed with the District Court's assessment of the evidence in the Remand Order. Tr. 643-46. The ALJ did not hear any new testimony regarding the medical evidence or Plaintiff's limitations, including the added severe impairment of fibromyalgia. The ALJ did not treat the medical evidence differently and did not cite substantially different evidence. The only new evidence cited by the ALJ pertained to two treatment encounters from February 23, 2013 and October 27, 2013 for pain. Tr. 645-46; *cf. Celedon v. Berryhill*, No. 1:16-cv-0040-JLT, 2017 WL 3284519, at *5 (E.D. Cal. Aug. 2, 2017) (deciding that the law of the case doctrine did not apply because the ALJ considered over 2,000 additional pages of medical records at the remand hearing).

Defendant does not refute the contention that consistency of Plaintiff's physical symptom claims with the objective evidence was already decided by the District Court, nor does Defendant contend that an exception to the law of the case doctrine applies.[6] ECF No. 13 at 4. To the extent the identical reason cited by the

_____

[6] Defendant's response misconstrues the scope of the argument. ECF No. 13 at 4 (contending it was not error to reconsider Plaintiff's subjective allegations). Plaintiff does not contend law of the case applies to the evaluation of Plaintiff's

ORDER - 19

ALJ was previously decided and rejected by the District Court, the ALJ was bound by the Court's previous decision. Therefore, the ALJ violated the law of the case doctrine by discrediting Plaintiff's physical symptom claims based on the same reasons that the District Court previously found unpersuasive. This is grounds for remand.

Alternatively, Plaintiff contends that even if the law of the case doctrine does not apply, the evidence cited by the ALJ in fact supports Plaintiff's physical symptom claims related to chronic pain. ECF No. 12 at 11-13 (noting hypersensitivity and reduced range of motion is consistent with her diagnosis of fibromyalgia and pain can be related to both physical and psychological factors). However, given the District Court's previous review of the evidence in the Remand Order and the ruling here, the Court need not review the consistency of the evidence a second time. Subjective pain testimony may not be rejected *solely* because it is not corroborated by objective medical findings. *Rollins*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ improperly rejected Plaintiff's physical symptom claims based solely on the lack of objective medical evidence.

---

symptom claims, but rather to the specific issue of whether the objective evidence supports Plaintiff's physical symptom claims.

ORDER - 20

b.    Mental Health Symptoms

As to Plaintiff's mental health limitations, the ALJ found that "the objective medical evidence indicates . . . . she is not as limited as alleged."  Tr. 646.

The District Court's Remand Order found that the ALJ's 2014 decision had relied upon a selective discussion of the record and pointed to other evidence demonstrating Plaintiff also presented to her providers with an abnormal mood and affect.  Tr. 722 (citing Tr. 271, 274, 423, 429, 433, 437, 523, 526, 600).  For example, the Remand Order noted that consultative examiner Joan Davis had indicated Plaintiff was experiencing "vegetative symptoms of depression."  Tr. 722.  The Remand Order concluded: "The Court finds that Plaintiff's allegations of psychological symptoms are not unsubstantiated by or inconsistent with the longitudinal objective evidence of record."  Tr. 723.

On remand the ALJ repeated her finding that the evidence of Plaintiff's presentation at her medical appointments was consistent with the RFC.  Tr. 646-47.  Specifically, the ALJ found that the record showed Plaintiff "typically presented" at her medical appointments: 1) "with an intact recent and remote memory and judgment, insight, or thought processes within normal limits"; 2) "with a normal or appropriate mood and affect"; 3) with "normal speech"; 4) with "intact attention and concentration" because she performed adequately at the consultative evaluation on June 30, 2012; and 5) "consistently on time."  Tr. 646-47.  The ALJ

noted that many of the examinations referred to in the Remand Order also included normal mental status findings which she concluded, "calls into questions the consistency of [Plaintiff's] complaints." Tr. 646.

As with Plaintiff's physical limitations, the ALJ improperly rejected Plaintiff's mental health symptom claims solely for lack of objective medical evidence corroborating them. An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster her findings. *See, e.g., Holohan v. Massanari,* 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). The ALJ is not permitted to "cherry pick" from mixed evidence to support a denial of benefits. *Garrison*, 759 F.3d at 1017 n.23. On remand, instead of reviewing the consistency of Plaintiff's allegations with the medical evidence, the ALJ reviewed the medical evidence for consistency with the ALJ's pre-determined RFC. The ALJ cited portions of the record showing unremarkable mental status findings, while the longitudinal record showed more mixed results, leading to a characterization of the medical evidence as a whole that is not supported by substantial evidence. Based on the foregoing, and after an exhaustive review of the record, the Court finds the ALJ's decision, appears to consider only portions of the longitudinal record that favored the ultimate rejection of Plaintiff's symptom claims. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th

Cir. 1984) (an ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result"). This was not a clear and convincing reason, supported by substantial evidence, for the ALJ to reject Plaintiff's symptom claims.

In sum, in rejecting Plaintiff's symptom claims the ALJ violated the law of the case doctrine and failed to cite reasons that were specific, clear, convincing, and supported by substantial evidence. The ALJ's rejection of Plaintiff's symptom claims based on Plaintiff's daily activities is not clear, convincing and supported by substantial evidence. The only other reason cited by the ALJ, i.e., the lack of objective evidence, cannot be the sole reason for rejecting Plaintiff's symptom claims. As such, even if the law of the case doctrine were not violated, the lack of adequate reasons warrants remand.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly weighed the medical opinions of Joan Davis, M.D., Wayne Kohan, M.D., and Brenda Vanderpool, LMHC. ECF No. 12 at 16-21.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan,* 246 F.3d at 1201-02 (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-831).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim*, 763 F.3d at 1161 (alteration in

original).  However, an ALJ is required to consider evidence from non-acceptable medical sources, such as therapists.  20 C.F.R. § 404.1527(f).  An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

## 1. Dr. Davis

In June 2012, Dr. Davis performed a psychiatric consultative examination and diagnosed Plaintiff as follows:  Axis I: major depressive disorder by history, nicotine dependence, marijuana dependence; Axis II: deferred; Axis III: chronic low back pain, migraines and asthma; Axis IV: interpersonal relationship stressors, financial stressors; and Axis V: GAF score 45.  Tr. 526.  Dr. Davis noted that despite taking medications, Plaintiff was "still experiencing vegetative symptoms of depression."  *Id*.  Based on her review of records from Ms. Vanderpool, her evaluation of Plaintiff, and diagnoses, Dr. Davis opined Plaintiff has the ability to manage her funds, to perform simple and repetitive tasks, to interact with supervisors as well as coworkers and members of the public, and to perform work activities of a simple nature without special or additional instructions, but would have difficulty with more complicated or detailed tasks due to deficiency in her recent memory.  *Id*.  She further opined that "in her current condition, . . . [Plaintiff] could potentially experience difficulty maintaining workplace

attendance as well as dealing with the usual workplace stressors secondary to her symptoms of major depressive disorder." *Id*.

The ALJ accorded significant weight to the majority of Dr. Davis' opinion, except the last two limitations regarding attendance and dealing with workplace stressors, which the ALJ accorded little weight. Tr. 648. Because this portion of Dr. Davis' opinion was contradicted by state agency consultants Leslie Postovoit, Ph.D., Tr. 78, and Cynthia Collingwood, Ph.D., Tr. 92-93, the ALJ was required to provide specific and legitimate reasons for partially rejecting Dr. Davis' opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Davis' objective findings "did not support her assessed limitations" and the limitations "appear to be based exclusively on [Plaintiff's] described symptoms." Tr. 648. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Further, a physician's opinion may be rejected if it is based on a claimant's subjective complaints, which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of*

*Soc. Sec. Admin.*, 169 F.3d 541, 602 (9th Cir. 1999); *Fair*, 885 F.2d at 604.

However, when an opinion is not more heavily based on a patient's self-reports

than on clinical observations, there is no evidentiary basis for rejecting the opinion.

*Ghanim*, 763 F.3d at 1162; *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-

1200 (9th Cir. 2008). A clinical interview and mental status evaluation are

objective measures and cannot be discounted as a "self-report." *Buck v. Berryhill*,

869 F.3d 1040, 1049 (9th Cir. 2017).

Here, the ALJ concluded the objective findings did not support limitations

with attendance or dealing with workplace stressors, but did not offer an

explanation for her conclusion. Tr. 648. "To say that medical opinions are not

supported by sufficient objective findings . . . does not achieve the level of

specificity [the Ninth Circuit's] prior cases have required. . . . The ALJ must do

more than offer [her] conclusions. [She] must set forth [her] own interpretations

and explain why they, rather than the doctors', are correct." *Embrey,* 849 F.2d

418, 421–22 (9th Cir. 1988). Dr. Davis conducted a clinical interview and mental

status examination, in which Dr. Davis found that Plaintiff's content of thought

was positive for passive suicidal ideation, her mood was depressed, and her

judgment/insight was limited. Tr. 525-26. Given the abnormal mental status

evaluation findings, which the ALJ did not discuss, the ALJ failed to adequately

justify her rejection of Dr. Davis' opinion.

Moreover, the ALJ also erred when she found Dr. Davis improperly relied upon Plaintiff's self-reports because, as discussed above, the ALJ did not properly discredit Plaintiff's symptoms concerning her mental impairments. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Next, the ALJ found Dr. Davis' two limitations in attendance and dealing with workplace stressors were contrary to "other medical evidence of record," specifically, the December 31, 2011 status report authored by a social worker describing Plaintiff as "consistently on time" for therapy sessions and the fact Plaintiff "arrived on time for her evaluation by Dr. Davis."[7] Tr. 648 (citing Tr. 485, 523). Plaintiff contends that the ALJ's finding is speculative, as Dr. Davis did not opine Plaintiff would have difficulty with punctuality and it is just one aspect of attendance. ECF No. 12 at 18 (noting other aspects of attendance include the ability to persist throughout the workday and ability to show up for work). Defendant did not respond to this argument. ECF No. 13 at 12-13. The record cited by the ALJ reflects Plaintiff had attended eight therapy appointments with the author of the report in the month of December (2011). Tr. 484. It is unclear and

---

[7] The Court notes that Plaintiff reported she is uncomfortable going out alone, Tr. 222, and that Plaintiff was driven by her mother to the appointment with Dr. Davis, which was cited by the ALJ. Tr. 648 (citing Tr. 523).

ORDER - 28

the ALJ did not explain how punctuality for her appointments is contrary to Dr. Davis' opinion she would have potential difficulties dealing with the usual workplace stressors secondary to symptoms of depression.  Although punctually arriving at weekly appointments unaccompanied suggests that Plaintiff may be capable of regularly attending to necessary matters, such that the ALJ could reasonably construe her attendance as contrary to Dr. Davis' opinion concerning potential difficulty with attendance, this reason standing alone is not sufficient to reject Dr. Davis' opinions.  *See, e.g., Turner v. Berryhill*, 693 F. App'x 722, n.1 (9th Cir. 2017) (Plaintiff's ability to conduct a "wide range of activities" and the fact he "came on time for his appointment," suggests ability to attend to necessary matters); *but see Villanueva v. Berryhill*, No. 6:17-cv-00064-HZ, 2018 WL 1626034, *7 (D. Or Apr. 4, 2018) (punctually arriving at two appointments is not indicative of ability to sustain regular attendance at work over a longer period of time).

Defendant contends Dr. Davis' opinion was "speculative and vague and was not a precise functional limitation."  ECF No. 13 at 13.  However, this was not a reason relied on by the ALJ and according to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—not post hoc rationalizations

ORDER - 29

that attempt to intuit what the adjudicator may have been thinking." *Bray*, 554

F.3d at 1225.

In sum, the ALJ failed to provide specific and legitimate reasons to reject

Dr. Davis' opinions. This error was not harmless. *See Stout v. Comm'r Soc. Sec.*

*Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-

prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion). The

ALJ's RFC and hypothetical to the vocational expert did not include any

limitations pertaining to attendance. Tr. 641-42, 668-70. When asked by

Plaintiff's counsel, the vocational testified that an employer would not tolerate

absences over one day a month on an ongoing basis. Tr. 671.

### 2. Dr. Kohan

Since January 2010 and throughout the period under consideration (and

thereafter), Dr. Kohan was Plaintiff's primary care physician. *See, e.g.*, Tr. 278-

314, 558-69. In March 2013, Dr. Kohan completed a Medical Report form. Tr.

603-04. He diagnosed migraine headaches, chronic low back pain, irritable bowel

syndrome (IBS), depression and anxiety. Tr. 603. He indicated Plaintiff needed to

lie down for one to two hours per day due to nausea, dizziness, and back pain. Tr.

603. He indicated that both Plaintiff's physical and mental impairments cause

Plaintiff pain. *Id*. Dr. Kohan opined Plaintiff would be unable to persist working

eight hours per day and would miss on average four or more days per month.  Tr.

605.  He opined these limitations existed for three to four years.  *Id*.

Because Dr. Kohan's opinion was contradicted by the opinion of state

reviewing physician, Wayne Hurley, M.D., Tr. 90-92, and consultative examiner

William Drenguis, M.D., Tr. 537-38, the ALJ was required to provide specific and

legitimate reasons for rejecting Dr. Kohan's opinion.  *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Kohan's opinion "lack[ed] supportability" because

"in his treating source statement he fails to offer any objective findings to support

these significant limitations."  Tr. 647.  A medical opinion may be rejected if it is

unsupported by medical findings.  *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of

Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957;

*Tonapetyan*, 242 F.3d at 1149; *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.

1992).  However, if treatment notes are consistent with the opinion, the opinion

may not automatically be rejected because the form it is on is unaccompanied by

an explanation.  *See Garrison*, 759 F.3d at 1014 n.17.  The Ninth Circuit has

explained that "the treating physician's opinion as to the combined impact of the

claimant's limitations—both physical and mental—is entitled to special weight."

*Lester*, 81 F.3d at 833.  "The treating physician's continuing relationship with the

claimant makes him especially qualified to evaluate reports from examining

doctors, to integrate the medical information they provide, and to form an overall

conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." *Id.* Here, the record contains treatment notes from Dr. Kohan's clinic (Columbia Family Medicine) starting in January 2008 and from Dr. Kohan beginning in January 2010. *See* Tr. 266-314, 404-40, 466-70, 528-33, 568-69. Dr. Kohan treated Plaintiff on numerous occasions for chronic pain, gastrointestinal issues, depression, and anxiety. Tr. 279 (June 2010: assessing neck strain and providing referral to physical therapy); Tr. 280-81 (June 2010: treating Plaintiff for worsening pain; musculoskeletal review positive for lower back pain and depression; increasing prescription for depression; recommending counseling); Tr. 282-83 (Aug. 2010: finding musculoskeletal tenderness to palpation in the upper back and lateral epicondyles; referring Plaintiff to rheumatologist for possible fibromyalgia); Tr. 284-85 (Aug. 2010: assessing low back pain and myalgia/myositis; discussing treatment options "at great length"; prescribing Lyrica and increasing hydrocodone prescription; psychiatric observation Plaintiff was "tearful at times"); Tr. 286 (Sept. 2010: reviewing prescriptions for myalgia/myositis and depression); Tr. 301-02 (Jan. 2010: noting Plaintiff has "chronic" low back pain with radicular symptoms; finding pain index of eight; assessing GERD (gastroesophageal reflux disease) and refilling prescription Omeprazole); Tr. 303-04 (Feb. 2010: describing anxiety disorder diagnosed more than five years ago with symptoms including apprehension and

ORDER - 32

panic attacks; review of systems positive for fatigue and insomnia; assessed abdominal pain and generalized anxiety disorder); Tr. 305-06 (Feb. 2010: evaluating for knee pain and major depression; review of systems positive for "feelings of stress"; examination reveals "fleeting suicidal thoughts" and tearfulness); Tr. 307-08 (Mar. 2010: psychiatric review positive for feelings of stress; assessing anxiety disorder and major depression); Tr. 311 (Apr. 2010: noting fatigue and positive psychiatric findings for feelings of stress); Tr. 313-14 (May 2010: noting "long history of pain in her right scapular area," crepitus, tenderness and effusion in right periscapular area; continuing treatment for major depression noting "[s]he is tearful at times"); Tr. 417 (Jan. 2010: low back pain described as "chronic"; neurological exam positive for paresthesia in toes); Tr. 558-59 (Mar. 2013: assessing pain level nine, back pain, and generalized anxiety disorder); Tr. 569 (May 2013: documenting record of diagnosis of chronic cholecystitis and cholelithiasis).  Here, "it is unclear whether the ALJ considered the treatment notes in the record, and if so, what specifically made them insufficient to support the opinion."  *Jones v. Astrue*, 503 F. App'x 516, 517 (9th Cir. 2012).  This is critical because the pages of clinic notes from Columbia Family Medicine do offer objective findings, none of which are discussed by the ALJ. Accordingly, the ALJ was not entitled to reject Dr. Kohan's opinions merely because his statement was prepared without the inclusion of objective findings.

Second, the ALJ claimed Dr. Kohan stated he had been "unable to do *any* work up on her conditions due to financial and insurance constraints." Tr. 647 (citing Tr. 603) (emphasis added). The ALJ then inferred: "[t]his statement would suggest that he does not have *any* basis or objective findings to substantiate his opinions, and instead relied upon [Plaintiff's] subjective complaints and self-reported limitations, and thus his opinions are of dubious supportability." Tr. 647 (emphasis added). The ALJ's characterization of Dr. Kohan's statement is factually inaccurate. Dr. Kohan stated he was "unable to do *much* workup due to lack of insurance." Tr. 603. Here, the ALJ did not review and discuss the treatment notes for any basis for his opinions. Tr. 647. Even if the ALJ could have relied upon the evidence to conclude the opinion was based more heavily on Plaintiff's self-report, because the ALJ did not properly discredit Plaintiff's symptoms concerning her mental and physical impairments, Plaintiff's self-report was not a proper basis to reject Dr. Kohan's opinion. *See Tommasetti*, 533 F.3d at 1041.

Third, the ALJ found Dr. Kohan's opinion was inconsistent with the "normal physical findings" in the medical evidence revealing Plaintiff retained "full motor strength, intact reflexes, and intact sensation." Tr. 647 (citing Tr. 299, 301, 351, 385, 537, 573, 577). A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278

F.3d at 957; *Tonapetyan*, 242 F.3d at 1149; *Matney*, 981 F.2d at 1019. An ALJ

may discredit physicians' opinions that are unsupported by the record as a whole.

*Batson*, 359 F.3d at 1195. Insofar as this evidence is arguably inconsistent with the

opinion Plaintiff could not work due to her physical impairments, this evidence

alone not sufficient reason to discount the entirety of Dr. Kohan's opinion and

treatment notes. This is particularly true where Dr. Kohan noted that Plaintiff's

limitations, including her pain, are affected by *both* physical and psychological

impairments. Tr. 603-04. The impairments and symptoms described by Dr.

Kohan in his medical statement and in his treating records, include migraine

headaches, nausea, dizziness, depression, fatigue and anxiety, which would not

necessarily impact motor strength, reflexes or sensation. Nor is it evident whether

pain from Plaintiff's multiple tender points, Tr. 537, would impact motor strength,

reflexes, or sensation. The inconsistency with the record cited by the ALJ was not

a specific and legitimate reason supported by substantial evidence to reject Dr.

Kohan's opinion.

Last, the ALJ noted that Dr. Kohan's opinion was inconsistent with "the

State Agency medical consultants, who are experts in our program of disability

evaluation and had an opportunity to review the objective medical evidence." Tr.

647. The opinion of a non-examining physician, without other substantial

evidence, is insufficient to reject the opinion of a treating physician. *Lester*, 81

F.3d at 8431. To the extent the ALJ was effectively discounting Dr. Kohan's

opinions on the basis of supposed lack of familiarity with the social security

disability program, the ALJ acted improperly. *See Gravina v. Astrue*, No. 10–cv–

6753, 2012 WL 3006470, *5 (N.D. Ill. July 23, 2012) ("[I]f an ALJ can reject a

treating physician's opinion simply because a non-treating, non-examining doctor

is more familiar with the disability standards, he would be granting favored status

to the non-treating doctor that is unsupported by the regulations."); *Horton v.

Comm'r of Soc. Sec.*, No. 4:15-cv-00008, 2016 WL 1381839, at *10 (W.D. Va.

Apr. 6, 2016) (finding that reasoning rang hollow where "the ALJ provided no

support for his conclusion that these medical professionals were unfamiliar with

the SSA disability program, and offered no explanation for why [the treating

physicians'] supposed lack of familiarity with disability standards made their

opinions any less reliable than those of the DDS experts").

However, the extent to which a medical source is "familiar with the other

information in [the claimant's] case record" is relevant in assessing the weight of

that source's medical opinion. *See* 20 C.F.R. § 404.1527(c)(6). Here, the ALJ's

decision does not explain why the ALJ believed the state agency consultants were

more familiar with Plaintiff's medical history in 2012, than Dr. Kohan was in

2013. Furthermore, this matter was remanded specifically for further consideration

of Plaintiff's severe impairment of fibromyalgia, which was not diagnosed until

2014, Tr. 600, but was suspected by Dr. Kohan in 2010, Tr. 283. Whereas the state agency medical consultant did not specifically consider fibromyalgia as a possible primary source of Plaintiff's pain, Dr. Kohan did. *See* Tr. 88, 91 (recommending avoiding heights and hazards due to "myalgias"). Given his treating relationship with the Plaintiff, inconsistency with the non-examining reviewing state agency consultants was not a specific and legitimate reason to reject Dr. Kohan's opinion. In sum, the ALJ improperly rejected Dr. Kohan's opinion.

### 3. Ms. Vanderpool

Ms. Vanderpool, a licensed mental health counselor, treated Plaintiff from October 2011 through at least January 2012. Tr. 474-521. In February 2013, Ms. Vanderpool completed a medical source statement and opined that Plaintiff was: (1) severely limited (defined as unable to perform) in her ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (2) markedly limited (defined as 33 percent of the workday) in her ability to remember locations and work-like procedures, the ability to carry out very short simple instructions, the ability to work in coordination with others, the ability to make simple work-related

decisions, the ability to respond appropriately to changes in the work setting, and the ability to set realistic goals or make plans independently of them. Tr. 605-07. Ms. Vanderpool also assessed seven other moderate and mild limitations, including a moderate limitation in the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances. *Id.*

The ALJ assigned "little weight" to Ms. Vanderpool's opinion. Tr. 650. As Ms. Vanderpool does not qualify as an acceptable medical source, the ALJ was required to give reasons "germane" in order to reject her findings. *Ghanim*, 763 F.3d at 1161.

First, the ALJ discounted Ms. Vanderpool's opinion because she did "not offer any basis for these significant limitations." Tr. 650 (referring to the marked to severe limitations assessed by Dr. Vanderpool). Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Contrary to the ALJ's finding, Ms. Vanderpool did in fact offer a basis for her opinion, explaining in the comment section of the form:

> Patient continues to have depression and anxiety which is not being
> successfully controlled with medications. She is unable to access medical

service due to lack of income. The anxiety exacerbates the depression which in turn increases the anxiety. Counseling services are being provided pro bono. Patient appears to have symptoms of Bipolar Disorder I including mania, major depression, mood symptoms. It would be beneficial for the patient to be tested to rule out other psychological disorders.

Tr. 607. Moreover, the record includes Ms. Vanderpool's detailed treatment notes documenting more than 25 session hours of counseling. Tr. 471-522. The ALJ's decision does not reference this treatment record. The ALJ's reason was factually inaccurate and was not a germane reason to reject Ms. Vanderpool's opinion.

Second, the ALJ found that Ms. Vanderpool's limitation as to Plaintiff's ability to carry out short simple instructions was inconsistent with Plaintiff's demonstrated ability to subtract serial sevens, spell "world" forward and backward, and repeat forward and backward digit spans. Tr. 650. Although this inconsistency was perhaps a germane reason to partially reject Ms. Vanderpool's opinion, it does not provide a germane reason to reject all of the disabling limitations assessed.

Finally, the ALJ discounted Ms. Vanderpool's opinion, concluding that "the limitations . . . are unsubstantiated by the record" because of Plaintiff's ability to care for her children, drive a car, prepare meals, do light household chores, and go shopping. Tr. 650. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan*, 169 F.3d at 601-02. Here, some of Plaintiff's daily activities are inconsistent with some of the extreme

assessed limitations. However, the Court notes there is no evidence Plaintiff

engaged in these daily activities for sustained periods comparable to those required

in a workplace setting. Plaintiff reported she was always tired and fatigued, she

had a hard time focusing and dealing with people, and pain limited her ability to

engage in these activities. Tr. 219. She testified that going to the grocery store

was "really hard," and she relied upon the help of her adult child, mother, and

husband to care for her youngest child. Tr. 58-59. Moreover, the ALJ did not

mention Dr. Vanderpool's assessed moderate (defined as 20-33% of the time)

limitations (including the ability to perform activities within a schedule, maintain

regular attendance, and be punctual within customary tolerances), nor did the ALJ

elaborate on the evidence suggesting Plaintiff required assistance to function in her

daily activities. Accordingly, on this record, the ALJ did not identify sufficient

reasons to reject the opinion.

**C. Remedy**

Plaintiff urges this Court to either award benefits or remand for further

proceedings. ECF No. 12 at 20.

"The decision whether to remand a case for additional evidence, or simply to

award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d

1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

When the Court reverses an ALJ's decision for error, the Court "ordinarily must

remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*, 379 F.3d at 595; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020. Under the credit-as-true rule, the court may remand for an award of benefits if 1) the record has been fully developed and further administrative proceedings would serve no useful purpose; 2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and 3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Revels*, 874 F.3d at 668. Yet, even where the three prongs have been satisfied, the court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

### 1. Completeness of the Record

As to the first element, administrative proceedings are generally useful where the record "has [not] been fully developed," *Garrison*, 759 F.3d at 1020, there is a need to resolve conflicts and ambiguities, *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995), or the "presentation of further evidence . . . may well

prove enlightening" in light of the passage of time, *I.N.S. v Ventura*, 537 U.S. 12, 18 (2002). *Cf. Nguyen v. Chater*, 100 F.3d 1462, 1466–67 (9th Cir. 1996) (remanding for ALJ to apply correct legal standard, to hear any additional evidence, and resolve any remaining conflicts); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (same).

Here, the record is sufficiently developed. This matter concerns a distinct period of time which began over 11 years ago and ended over five years ago. The administrative record is now in excess of 1400 pages and consists of over 700 pages of medical evidence, including the opinions of several treating providers, three consultative examiners, three non-examining doctors, and two testifying medical experts. The record also contains Plaintiff's function report and testimony at the first hearing, Plaintiff's mother's function report, and the testimony of two vocational experts.

*2. ALJ Error*

As discussed above, the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, for discounting Plaintiff's subjective symptom claims, for rejecting the opinions of Plaintiff's treating therapist Ms. Vanderpool, treating physician Dr. Kohan, and opinion of consultative examiner Dr. Davis. The Court notes the ALJ also committed other errors, including violating the law

of the case doctrine.  On this record, the second prong of the credit-as-true rule is met.

### 3. *Crediting as True Demonstrates Disability*

The third prong of the credit-as-true rule is satisfied for several reasons. First, if Ms. Vanderpool's opinion were credited, including that Plaintiff was unable to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, then Plaintiff is considered disabled. *See* Tr. 66-67.  Second, crediting as true Dr. Kohan's opinion that Plaintiff would be unable to persist in an eight-hour day or maintain full attendance and Dr. Davis' consistent opinion that Plaintiff would have difficulty maintaining workplace attendance, the ALJ would be required to find Plaintiff disabled.  The vocational expert testified that an individual missing over one day per month on an ongoing basis is precluded from substantial gainful employment.  Tr. 671.  Third, if Dr. Kohan's opinion that Plaintiff would need to lie down for one to two hours per day were credited as true, the ALJ would be required to find Plaintiff disabled. The vocational expert testified that an individual needing to lie down during the workday on times other than breaks and lunch could not perform the jobs identified.  Tr. 670.  Moreover, Plaintiff's testimony, her function report, and the

treatment notes of her treating providers show Plaintiff suffered from chronic pain, experienced severe symptoms of depression, and had a limited ability to persist.

### 4. *Additional Factors Influencing the Court's Discretion*

In this case, even after findings made by the District Court and its order to consider specific issues, the Commissioner has twice failed to provide legally sufficient reasons for discounting Plaintiff's subjective symptom claims. It would not be fair to Plaintiff to afford the Commissioner a third opportunity to address Plaintiff's symptom claims—an issue that was material to the ALJ's ultimate disability determination. *See, e.g., Benecke*, 379 F.3d at 595 (allowing Commissioner a second chance to decide the "central issue" in claimant's case "create[s] an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.") (citation omitted); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) (remanding for payment of immediate benefits where (i) ALJ erroneously rejected plaintiff's subjective pain testimony "solely for lack of [corroborating] objective medical evidence"; (ii) question of whether plaintiff was eligible for benefits turned "entirely on the credibility of [such] ... testimony"; (iii) plaintiff "presented objective medical evidence showing the existence of medical impairments which could reasonably be expected to produce his alleged pain and other symptoms"; and (iv) the vocational expert "established that [plaintiff's] testimony, taken as true, demonstrates that [plaintiff] is unable to do his previous

work or any other kind of substantial gainful work which exists in the national economy.") (citations omitted).

In addition, the credit-as-true rule is a "prophylactic measure" designed to motivate the Commissioner to ensure that the record will be carefully assessed and to justify "equitable concerns" about the length of time which has elapsed since a claimant has filed their application. *Treichler*, 775 F.3d at 1100. Here, the passage of time since the date of onset, the date last insured and the seven-year delay since the date of the application also make it appropriate for this Court to use its discretion and apply the credit-as-true doctrine and remand to the ALJ for the calculation and award of benefits.

In sum, under the credit-as-true doctrine, Plaintiff is entitled to benefits because she established limitations that should have been included in the RFC that would have precluded competitive employment. The Court therefore reverses and remands for the calculation and award of benefits.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

ORDER - 45

2. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

4. The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED September 27, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE